UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 21-CR-20321-CMA

**UNITED STATES OF AMERICA,**

    Plaintiff,

vs.

**LEONEL PALATNIK,**

    Defendant.
_____/

**DEFENDANT'S SENTENCING MEMORANDUM AND
REQUEST FOR A REASONABLE SENTENCE**

Defendant, **LEONEL PALATNIK ("Mr. Palatnik")**, by and through undersigned counsel, hereby files this Sentencing Memorandum and moves this Court pursuant to 18 U.S.C. § 3553(a)(1) to impose a reasonable sentence, all facts and circumstances considered.

### I.    INTRODUCTION

Given his personal history and characteristics, Mr. Palatnik respectfully requests this Court impose a reasonable sentence below the advisory guideline range. Such a sentence would be sufficient—but not greater than necessary—to satisfy the factors outlined in 18 U.S.C. § 3553(a). See Kimbrough v. United States, 552 U.S. 85, 101 (2007). Except for the offense conduct at issue here, Mr. Palatnik has led an exemplary and law-abiding life. Mr. Palatnik's total acceptance of responsibility, substantial cooperation with the Government, low likelihood of recidivism, and the public and private embarrassment of a felony conviction (which will negatively impact Mr. Palatnik for the rest of his life) all provide ample justification for the Court to impose a below-guideline sentence.

## II. PROCEDURAL HISTORY

1. On May 25, 2021, Mr. Palatnik was charged with one (1) count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371 (Count 1) and four (4) counts of paying kickbacks in connection with a federal healthcare program, in violation of 42 U.S.C. § 1320a-7b(b)(2)(B) (Counts 6–9). (D.E. 1).

2. On August 31, 2021, Mr. Palatnik pleaded guilty to Counts 1 and 9 of the Indictment. (D.E. 35).

3. Sentencing is set for November 9, 2021, at 1:00 PM. (D.E. 38).

## III. ADVISORY GUIDELINE CALCULATION

**A. UNCONTESTED GUIDELINE PROVISIONS**

U.S.S.G. §2X1.1 is the applicable guideline for violations of 18 U.S.C. § 371. Under U.S.S.G. §2X1.1(a), the base offense level is determined by the guideline for the substantive offense, which is U.S.S.G. §2B4.1. U.S.S.G. §2B4.1 is also the guideline for violations of 42 U.S.C. § 1320a-7b(b)(2)(B). Both Counts are grouped under U.S.S.G. §3D1.2(d) because the offense level is determined based on the total amount of aggregate loss.

The base offense level is eight (8). See U.S.S.G. §2B4.1(a). Twenty-two (22) levels are added pursuant to the loss table in U.S.S.G. §2B1.1 because the value of the improper benefit conferred was more than $25,000,000 but less than $65,000,000. See U.S.S.G. §§2B4.1(b)(1)(B) and 2B1.1(b)(1)(L).

According to the Plea Agreement, the base offense level should be reduced by two (2) points for acceptance of responsibility under U.S.S.G. §3E1.1(a). See Plea Agreement at ¶ 8 (D.E. 36). The Government has also agreed to file a motion requesting an additional one (1) level

decrease pursuant to U.S.S.G. §3E1.1(b) due to Mr. Palatnik's substantial and timely cooperation with the investigation of his misconduct. Id.

**B.     TOTAL OFFENSE LEVEL**

The resulting total offense level of twenty-seven (27) and criminal history category of I yield an advisory guideline range of seventy (70) to eighty-seven (87) months imprisonment. However, the mitigating factors set forth below justify a downward variance from the advisory guideline range.

### IV.     REQUEST FOR A REASONABLE SENTENCE

As this Court well knows, "[t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable." Nelson v. United States, 555 U.S. 350, 352 (2009) (emphasis on original); see also Gall v. United States, 552 U.S. 38, 39 (2007) (a district judge **"may not presume that the Guidelines range is reasonable but must make an individualized assessment based on the facts presented**."). "The corollary of that proposition is that district judges have an obligation to consider whether a sentence other than a Guidelines sentence would be sufficient, but not greater than necessary, to serve the purposes of sentencing" under 18 U.S.C. § 3553(a). See United States v. Corsey, 723 F.3d 366, 382 (2d Cir. 2013) (Underhill, J., concurring).

Unless otherwise prohibited by law, this Court "may consider, without limitation, any information concerning the background, character and conduct of [a] defendant." U.S.S.G. §1B1.4; see also 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

18 U.S.C. § 3553(a)(1) obliges the Court, "in determining the particular sentence to be imposed[,]" to consider "the nature and circumstances of the offense and the history and characteristics of the defendant."

Mr. Palatnik respectfully asks this Court to look beyond the advisory sentencing guideline range and instead focus on the principles pronounced by the United States Supreme Court, together with his personal characteristics, and thereafter impose a reasonable sentence.

### A. MITIGATING FACTORS

#### 1. THE HISTORY AND CHARACTERISTICS OF LEONEL PALATNIK

Congress has directed that a defendant's personal characteristics should be considered equally with "the nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). Yet these factors are given no weight in the guideline calculation; indeed, the guidelines recognize only the defendant's past criminal record (providing for higher offense levels for a greater criminal history, rather than reductions for no prior record). See Rita v. United States, 551 U.S. 338, 364-65 (2007) ("The Commission has not developed any standards or recommendations that affect sentencing ranges for many individual characteristics. Matters such as age, education, mental or emotional condition, medical condition (including drug or alcohol addiction), employment history, lack of guidance as a youth, family ties, or military, civil, charitable, or public service are. . . matters that § 3553(a) authorizes the sentencing judge to consider."); see also United States v. Prosperi, 686 F.3d 32, 39 & 45 (1st Cir. 2012) (affirming a downward variance from an advisory guideline range of 87–108 months to home detention because the guidelines did not take into account the personal characteristics of the defendant); United States v. Martin, 520 F.3d 87, 93 (1st Cir. 2008) (affirming a 91-month variance down from the guideline range based in part on the defendant's "personal qualities indicating his potential for rehabilitation"). Therefore, we urge the Court to balance the

federal sentencing guideline calculations by considering the history and characteristics of Mr. Palatnik that weigh in favor of a below-guidelines sentence.

Mr. Palatnik was born in Buenos Aires, Argentina, on December 21, 1978. He is the son of Abraham Palatnik and Adela Palatnik and one of three (3) siblings. Mr. Palatnik comes from humble beginnings. Like many immigrants, Mr. Palatnik and his family moved to the United States in pursuit of the American Dream. His father worked as a garment cutter and his mother as a seamstress. Despite his family's working-class lifestyle, Mr. Palatnik enjoyed a stable childhood in a loving home where his parents taught him the importance of family, hard work, and helping others.

Growing up, Mr. Palatnik was unsure of his purpose. He struggled to find what he enjoyed doing, which is reflected by his educational and employment record—dropping out of high school in pursuit of a professional soccer career, attending multiple undergraduate institutions, and working various, unrelated jobs. However, due to the difficult economic circumstances he experienced, Mr. Palatnik developed into an ambitious person. After seeing the sacrifices his parents made to provide for him and his brothers, Mr. Palatnik wanted, more than anything, to make his family proud of him. For Mr. Palatnik, the way to achieve his goal was through accumulation of material wealth. That ambition, however, led him to turn a blind eye to what is right and what is wrong.

When presented with the opportunity, Mr. Palatnik took the misguided path to make "easy" money. Mr. Palatnik understands he did so without fully appreciating the consequences of his decisions. To be clear, Mr. Palatnik's actions were not mistakes. They were intentional and deliberate, but not born from malice or a desire to hurt others. On the contrary, Mr. Palatnik is a very caring, kind, and gentle person.

It is unfortunate that Mr. Palatnik devoted his considerable potential to the scheme which has brought him before the Court. Yet, Mr. Palatnik views this experience as an opportunity to redeem himself and to remedy the harm he has caused—and in the process become a person his family can be proud of once again.

We urge this Court not to define Leonel Palatnik solely by the conduct at issue here. He is a son, a brother, an uncle, a friend, a neighbor, and most importantly, a good human being. In its remarks on the effect of incarceration on first-time, nonviolent offenders, the court in United States v. Prosperi, 686 F.3d 32 (1st Cir. 2012), recognized the punishment inherent to those who are thrust into the criminal justice system:

> I think it is very difficult at times, for those of us who are judges or prosecutors or lawyers, to put ourselves in the shoes of a person with no prior experience with the criminal justice system who finds himself or herself accused of a crime. I do not think, sometimes, we fully recognize the anguish and the penalty and the burden that persons face when called to account, as these men are, for the wrong that they committed.

Id. at 48.

Mr. Palatnik respectfully requests the Court take his personal characteristics and life history into account when imposing sentence.

### 2. MR. PALATNIK'S ACCEPTANCE OF RESPONSIBILITY AND COOPERATION

One of the goals of sentencing is rehabilitation. See Williams v. New York, 337 U.S. 241, 248 (1949). A defendant's admission of responsibility or expression of contrition "is often a significant first step towards his rehabilitation and, for that reason, deserving of a possible reward in the form of a lessened sentence." Smith v. Wainwright, 664 F.2d 1194, 1196 (11th Cir.1981).

Furthermore, "[a] sentencing court has the power to consider a defendant's cooperation under §3553(a), irrespective of whether the Government files a §5K1.1 motion"). United States v. Robinson, 741 F.3d 588 (5th Cir. 2014); see also United States v. Landrón-Class, 696 F.3d 62

6

(1st Cir. 2012); United States v. Massey, 663 F.3d 852 (6th Cir. 2011); United States v. Leiskunas, 656 F.3d 732 (7th Cir. 2011); United States v. Doe, 398 F.3d 1254 (10th Cir. 2005).

Unlike defendants who never acknowledge their wrongful behavior, Mr. Palatnik accepted responsibility for his actions, and he is truly remorseful for the harm that his criminal conduct has caused. Mr. Palatnik understands that his crime was not a victimless one, and that he must atone for same. He is ashamed of the fact that he undermined the stability of important federal healthcare programs designed to provide services to disabled, socio-economically disadvantaged, and retired individuals. Despite this, Mr. Palatnik urges the Court to bear in mind his sincere desire to be a productive member of society and to never reoffend again.

Mr. Palatnik promptly began cooperating with law enforcement's investigation of both his conduct and that of his co-conspirators. He has openly and honestly disclosed information about the offense and provided his best, good-faith effort to assist the Government with its investigation. Due to the nature and circumstance of this fraud, we believe his cooperation has saved the Government hundreds of hours of time and avoided the substantial costs associated with trial for both this Court and the prosecutors.

Mr. Palatnik's cooperation and complete acceptance of responsibility for his actions weigh in favor of this Court granting a downward variance below the advisory guideline range. See Roberts v. United States, 445 U.S. 552, 558 (1980) (stating a defendant's cooperation demonstrates that the defendant "will transgress no more…respond to rehabilitative efforts…[and] not deem himself at war with his society."); see also United States v. Gardellini, 545 F.3d 1089 (D.C. Cir. 2008) (imposing sentence of probation for defendant convicted of filing false income tax return, where guidelines called for 10-16 months' imprisonment, because defendant "cooperated with authorities and accepted responsibility…to an extraordinary degree.")

### 3. MR. PALATNIK'S EARLY RESTITUTION

Mr. Palatnik is determined to pay as much of the forfeiture and restitution amounts owed as possible. Mr. Palatnik has been employed since March 2021 as a Creative Director at Etrend Media Group LLC, an e-commerce company owned by his brother. Although he does not earn a significant amount of income at his current job and presently does not have his own residence, Mr. Palatnik is prioritizing the repayment of his restitution. He has agreed to the forfeiture judgment of $686,590.00 to be paid immediately after sentencing. Mr. Palatnik hopes this Court gives great consideration to the fact that he is doing his best to remedy the damage he caused.

Mr. Palatnik respectfully urges this Court to consider his substantial efforts to pay restitution promptly when fashioning its sentence sub judice. See United States v. Kim, 364 F.3d 1235 (11th Cir. 2004) (holding payment of $280,000 in restitution by defendants, a husband and wife, after they pled guilty to conspiracy to defraud the United States and fraudulently obtaining government assistance, respectively, demonstrated their sincere remorse and acceptance of responsibility and was extraordinary enough to justify downward departure from 24 months to probation and home detention where defendants dipped significantly into their life savings and voluntarily undertook enormous amount of debt to pay restitution.); see also United States v. Oligmueller, 198 F.3d 669, 672 (8th Cir. 1999) (upholding downward departure for extraordinary restitution where defendant made voluntary payments a year prior to indictment, often worked sixteen-hour days on his farm to raise the money, took on a second job, turned over his life insurance policy and his wife's certificate of deposit, and gave up his home).

### 4. MR. PALATNIK'S PERSONAL CHARACTERISTICS SHOULD BE CONSIDERED WITH THE NEED FOR SPECIFIC DETERRENCE

A lengthy term of incarceration "may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." Gall 552 U.S. at 54. The United States Sentencing Commission has recognized that alternatives to incarceration "divert offenders from the criminogenic effects of imprisonment which include contact with more serious offenders, disruption of legal employment, and weakening of family ties." See "Sentencing Options Under the Guidelines," United States Sentencing Commission (1996).[1]

While he is mindful that his offense is serious and requires punishment, Mr. Palatnik asks the Court to consider that he is a first-time offender who is committed to never reoffending. A substantial period of imprisonment is not necessary to deter him from committing any future crimes. See United States v. Bannister, 786 F.Supp. 617, 659 (E.D.N.Y 2011) (observing that "recidivism may be promoted by the behavior traits prisoners develop while incarcerated"). Mr. Palatnik has been volunteering his time at two (2) separate facilities: "Feeding South Florida" and "HandsOn Broward." His efforts include, but are not limited to, preparing and packaging food for the homeless, as well as cooking and distributing food for people presently residing in homeless shelters.

In addition to the punishment imposed by this Court, Mr. Palatnik will bear the consequences of this conviction for the rest of his life. See United States v. Stewart, 590 F.3d 93, 141 (2d Cir. 2009) ("the need for further deterrence and protection of the public is lessened because

---

[1] Available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/working-group-reports/simplification/SENTOPT.pdf

the conviction itself already visits substantial punishment on the defendant"). In light of these considerations, Mr. Palatnik asks this Court to impose a below-guidelines sentence.

 5. **MR. PALATNIK'S LOW LIKELIHOOD TO RECIDIVATE**

In 2004, the Federal Sentencing Commission published a report which presented a statistical analysis of the characteristics associated with the likelihood of a person recidivating. The study showed that (1) those sentenced under economic crime guidelines were less likely to recidivate than those sentenced under other guidelines; (2) older individuals were less likely to reoffend; (3) first-time offenders were less likely to recidivate than repeat offenders; (4) those who were employed were less likely to recidivate than those who were unemployed; (5) college graduates were significantly less likely to reoffend than those with lower levels of educational attainment; and (6) people who received non-incarcerative sentences were less likely to reoffend than those who received sentences involving incarceration. See "Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines," United States Sentencing Commission (May 2004) at 28-32.[2] Each of these factors supports a finding that Mr. Palatnik poses a very low risk of reoffending.

The Eleventh Circuit discussed the likelihood of recidivating in United States v. Clay, 483 F.3d 739 (11th Cir. 2007). In Clay, the District Court sentenced the defendant to 60 months, even though his guidelines were 188-235 months, because of the District Court's view that the defendant was not likely to re-offend. Id. at 742–43. In affirming the defendant's sentence, the Eleventh Circuit stressed that a sentencing Court is "require[d] . . . to consider characteristics of the defendant and the offense that make it more or less likely that the defendant will reoffend." Id.

---

[2] Available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf

at 745. Because the defendant in that case had "fundamentally changed since his offense" and "pose[d] a lesser risk to the community," the Eleventh Circuit determined that the sentencing court was correct in issuing a variance. Id. at 746. See also Gall v. United States, 552 U.S. 38, 57–59 (2007); United States v. Cherry, 487 F.3d 366, 369–70 (6th Cir. 2007) (granting significant downward variance from the guideline range where the defendant presented a low risk to reoffend); Prosperi, 686 F.3d at 48 (affirming non-incarcerative sentence where there was no risk of recidivism).

As further proof of the extremely low risk of Mr. Palatnik reoffending, he has religiously observed the conditions of his release pending disposition of this matter and reported to his probation officer without fail. See United States v. Munoz-Nava 524 F.3d 1137 (10th Cir. 2008) (holding district court's sentence of one year and one day in prison plus one year of home detention reasonable in drug case where guidelines were 47-56 months, partly because of defendant's "behavior while on a year-and-a-half pretrial release, which the district court found to be exemplary" showed the defendant was unlikely to reoffend).

Mr. Palatnik respectfully requests that the Court, when fashioning his sentence, vary downward from the advisory guidelines because of his extremely low likelihood of reoffending and lack of prior criminal history. See United States v. Tomko, 562 F.3d 558 (3d Cir. 2009) (affirming district court's sentence of probation for defendant convicted of tax evasion, where guidelines called for twelve (12) to eighteen (18) months imprisonment, in part because of the defendant's minimal criminal record).

### V.     CONCLUSION

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate . . . the crime and the punishment to ensue." <u>Koon v. United States</u>, 518 U.S. 81, 113 (1996). This is one of those unique cases that merits a below-guidelines sentence.

Respectfully submitted,

**GRAYROBINSON, P.A.**
333 S.E. 2nd Avenue, Suite 3200
Miami, Florida 33131
Telephone: (305) 416-6880
Facsimile: (305) 416-6887
Brian.Bieber@Gray-Robinson.com

By:     s/Brian Bieber
        BRIAN BIEBER
        Florida Bar #8140

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 1, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

s/Brian Bieber
BRIAN BIEBER, Esq.